**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLUE WILKINS,** | : | **Civil No.  1:15-CV-2239** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FRAN CHARDO,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

Glue Wilkins is a convicted felon who is serving a state sentence following his

conviction in 2003 on attempted murder charges.  Commonwealth v. Wilkins, 897

A.2d 524 (Pa. Super. Ct. 2006).  Wilkins' crimes have now inspired a decade of

quixotic litigation by the plaintiff, both in state and federal courts.  Thus, in the

course of the past two decades, Wilkins has unsuccessfully pursued a direct appeal

of his state conviction; Commonwealth v. Wilkins, 897 A.2d 524 (Pa. Super. Ct.

2006), and has failed in numerous efforts to obtain relief from this conviction both

in state and federal court.  See e.g., Wilkins v. Chardo, 2015 WL 6161062, at *1 (Pa.

Super. Oct. 19, 2015); Wilkins v. Reed, 2006 WL 543051, at *2-3 (M.D. Pa. Mar. 6,

1

2006); <u>Wilkins v. Corbett</u>, 2006 WL 229128, at *2-3 (M.D. Pa. Jan. 31, 2006); <u>Wilkins v. Kleinfelter</u>, 2006 WL 208806, at *2-3 (M.D. Pa. Jan. 26, 2006); <u>Wilkins v. Dauphin Cty.</u>, 2005 WL 1154996, at *2-5 (M.D. Pa. May 9, 2005) .

The instant lawsuit represents the latest manifestation of this decade of feckless litigation. This complaint names an assistant district attorney, Fran Chardo, as the sole defendant. Befitting a document which attempts to catalogue 10 years of fruitless litigation, Wilkins' latest complaint is voluminous, consisting of pleadings, along with random and seemingly unconnected exhibits, which together total some 90 pages in length. Yet, despite its voluminous nature, this document is often vacuous, and consists largely of a list of rulings and decisions in a host of other state and federal lawsuits. This catalogue of decisions is presented without any content or context, apparently on the theory that Wilkins' lack of success in all of this other litigation somehow equates to the civil rights violation. Thus, it is impossible to determine from this list of failed litigation whether any of these judicial acts state any colorable civil rights claims. Furthermore, the plaintiff's prayer for relief is also global and embraces injunctive and declaratory relief, along with $1,025,000 in compensatory and punitive damages.

Wilkins' complaint was filed in state court but was removed by the defendant to federal court. (Doc. 1.) The defendant has now moved to dismiss the complaint,

2

citing myriad deficiencies in Wilkins' complaint.  (Doc. 2.)  Wilkins has responded

to this motion, albeit in a singularly unresponsive fashion, (Doc. 6.),  and this matter

is now ripe for resolution.  For the reasons set forth below, we recommend that the

complaint be dismissed.

## II.   Discussion

### A.   Motion to Dismiss–Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint

should be dismissed for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).   With respect to this benchmark standard for legal

sufficiency of a complaint, the United States Court of Appeals for the Third Circuit

has aptly noted the evolving standards governing pleading practice in federal court,

stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel,

4

Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).   As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."   Id. at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level."   Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.   In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."   Id. at 679.   According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Id. at 678.   Rather, in conducting a

5

review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, when a complaint is "illegible or incomprehensible," id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen, supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005).  Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).

In our view, these pleading standards apply to all aspects of the court's analysis of a complaint's legal sufficiency.  Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint properly invokes the jurisdiction of this court.

### B.   This Complaint Fails to State A Claim Upon Which Relief Can Be Granted

In this case, dismissal of this complaint is warranted because Wilkins' pleading fails on multiple scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States.  Indeed, Wilkins' latest complaint is fatally flawed in at least seven separate respects.  The flaws in the *pro se* complaint lodged by Wilkins are discussed separately below.

### 1.   This Complaint Violates Rule 8 of the Federal Rules of Civil Procedure

At the outset, dismissal of this complaint is warranted because the complaint fails to comply with Rule 8's basic injunction that:  "A pleading that states a claim for relief must contain . . . *a short and plain statement of the claim* showing that the pleader is entitled to relief."  Dismissal of this complaint is appropriate since it is well-settled that:  "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled

to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", <u>id.</u>, or when a complaint "is also largely unintelligible," <u>Stephanatos v. Cohen</u>, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. <u>See, e.g.</u>, <u>Mincy v. Klem</u>, 303 F. App'x 106 (3d Cir. 2008); <u>Rhett v. New Jersey State Superior Court</u>, 260 F. App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen. supra</u>; <u>Scibelli v. Lebanon County, supra</u>; <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. <u>See, e.g.</u>, <u>Moss v. United States</u>, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); <u>Radin v. Jersey City Medical Center</u>, 375 F. App'x 205 (3d Cir. 2010); <u>Earnest v. Ling</u>, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); <u>Oneal v. U.S. Fed. Prob.</u>, CIV.A. 05-5509

9

(MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

Here, the complaint is voluminous, but largely incomprehensible.   The complaint, which is approximately 90 pages in length, hardly "contain[s] 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007).   Further, the complaint consist of an apparent, but often incomprehensible, catalogue of disputes regarding rulings in multiple lawsuits, a list of litigation outcomes that are presented without any context, content, coherence or continuity, making it virtually impossible to ascertain the legal and factual significance of Wilkins' allegations.   Thus, we are "left . . . having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011).   In such instances, Rule 8 calls for the dismissal of the complaint.

       **2.**      **<u>To the Extent That Wilkins Seeks to Re-litigate Claims That Were Previously Dismissed, the</u>**

**Doctrine of Collateral Estoppel Applies and Bars
Re-litigation of These Matters**

In addition, Wilkins' latest complaint appears to attempt to re-litigate matters

which have previously been conclusively resolved by the state and federal courts.

Specifically, this latest complaint once again pursues claims relating to misconduct

by state prosecutors, and endeavors to convert his disappointment with the rejection

of these claims in the past into a federal civil rights lawsuit.  In conducting an

assessment of this aspect of the complaint:  " We have the authority to apply the

doctrine of claim preclusion or *res judicata sua sponte.* Gleash v. Yuswak, 308 F.3d

758, 760 (7th Cir.2002); Ezekoye v. Ocwen Federal Bank FSB, 179 F.App'x 111, 114

(3d Cir.2006) (non precedential). [and] can . . .  invoke *res judicata* 'if it is so plain

from the language of the complaint and other documents in the district court's files

that it renders the suit frivolous.' Gleash, 308 F.3d at 760." Guider v. Mauer, CIVIL

1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009).  In our view, upon a

review of this, Wilkins' latest lawsuit, the *res judicata*, collateral estoppel and issue

preclusion doctrines apply and compel dismissal of any of these previously litigated

claims that are made by the plaintiff.

Collateral estoppel, *res judicata* and issue preclusion are doctrines which play

a vital role in litigation.  It has long been recognized that "[t]he doctrine[] of . . .

collateral estoppel, now  . . termed . . . issue preclusion, 'shar[es] the common goals

of judicial economy, predictability, and freedom from harassment....' Gregory v.

Chehi, 843 F.2d 111, 116 (3d Cir.1988).  Generally speaking, the . . . doctrine of issue

preclusion, 'precludes the relitigation of an issue that has been put in issue and

directly determined adversely to the party against whom the estoppel is asserted.'

Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)."  Electro-Miniatures Corp.

v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues,

have been defined by the United States Court of Appeals for the Third Circuit in the

following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating
> an issue that has already been actually litigated. "The prerequisites for
> the application of issue preclusion are satisfied when:  '(1) the issue
> sought to be precluded [is] the same as that involved in the prior action;
> (2) that issue [was] actually litigated; (3) it [was] determined by a final
> and valid judgment; and (4) the determination [was] essential to the
> prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch.
> Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re
> Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery
> Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  In its classic form,
> collateral estoppel also required "mutuality"-i.e., that the parties on both
> sides of the current proceeding be bound by the judgment in the prior
> proceeding.  Parklane Hosiery, 439 U.S. at 326-27.  Under the modern
> doctrine of non-mutual issue preclusion, however, a litigant may also be
> estopped from advancing a position that he or she has presented and lost
> in a prior proceeding against a different adversary.  See Blonder-Tongue
> Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane

> Hosiery, 439 U.S. at 329.  For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action.  See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007).  Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated.  Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997).  This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law.  See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims of prosecutorial misconduct made in the instant complaint the legal requisites for issue preclusion are fully satisfied, since:  " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227,

1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992));

see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore,

these claims should be dismissed.

### 3. Wilkins May Not Sue State Officials for Their Roles in a Criminal Case Which Resulted in His Conviction

In addition, Wilkins' latest complaint fails because it rests, in part, on a fatally

flawed legal premise.  At bottom, Wilkins seeks to bring a civil rights action against

a state prosecutor in his prior state case, premised on claims arising out of that state

criminal case, a case that resulted in a state conviction which has not otherwise been

set aside or overturned.

This he cannot do.  Quite the contrary, it is well-settled that an essential

element of a civil rights action in this particular setting is that the underlying criminal

case must have been terminated in favor of the civil rights claimant.  Therefore,

where, as here, the civil rights plaintiff brings a claim based upon a state case that

resulted in a conviction, the plaintiff's claim fails as a matter of law.  The United

States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)).  Given this close relation between § 1983 and tort liability, the Supreme Court has said that the

14

common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483(quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)).  The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct.  In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484.  Looking to the elements of malicious prosecution, the court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction.  Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

In this case it is evident from this complaint that Wilkins' prior state criminal attempted murder prosecution did not terminate favorably for him, since he admits that he was convicted in this state case.  Further, it is clear that this conviction and sentence have been repeatedly affirmed by both the state and federal courts.  Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor", id., the immutable fact of Wilkins' conviction presently defeats any federal civil rights claims based upon the conduct of this state case, and compels dismissal of these claims.  In short, this complaint is

based upon the fundamentally flawed legal premise that Wilkins can sue state officials for civil rights violations arising out of his state prosecution even though he stands convicted of attempted murder in that case.  Since this premise is simply incorrect, this complaint fails as a matter of law.

### 4.    The Rooker-Feldman Doctrine Also Bars Consideration of This Case

Moreover, at this juncture, where Wilkins has filed a civil action which invites this court to reject findings made by numerous courts in the course of an array of state court litigation instigated by the plaintiff over the past decade, the plaintiff also necessarily urges us to sit as a state appellate court and review, re-examine and reject these state court rulings in this state case.  This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....".  See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419

(3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments," particularly where

those lawsuits necessarily require us to re-examine the outcome of this state criminal

case.  As the United States Court of Appeals for the Third Circuit has observed in

dismissing a similar lawsuit which sought to make a federal case out of state court

rulings made in litigation relating to a prior state criminal case:

> The Rooker-Feldman doctrine divests federal courts of jurisdiction "if
> the relief requested effectively would reverse a state court decision or
> void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181,
> 192 (3d Cir.2006) (internal citations omitted).  The doctrine occupies
> "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544
> U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).  It applies only
> where "the losing party in state court filed suit in federal court after the
> state proceedings ended, complaining of an injury caused by the state-
> court judgment and seeking review and rejection of that judgment." Id.
> at 291, 125 S.Ct. 1517. . . . Ordering the relief he seeks, however, would
> require the District Court to effectively determine that the state courts'
> jurisdictional determinations were improper.  Therefore, [plaintiff]
> Sullivan's claims are barred by the Rooker-Feldman doctrine.  To the
> extent Sullivan was not "appealing" to the District Court, but instead
> was attempting to relitigate issues previously determined by the
> Pennsylvania courts, review is barred by res judicata.  See Nationwide
> Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d
> Cir.2009) (describing conditions in Pennsylvania under which collateral
> estoppel will bar a subsequent claim).

Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

This principle applies here.  Thus, in this case, as in <u>Sullivan</u>, the <u>Rooker-Feldman</u> and *res judicata* doctrines combine to compel dismissal of this case, to the extent that Wilkins improperly invites us to act as a Pennsylvania appellate court for matters and claims relating to state litigation arising out of the plaintiff's state criminal prosecution.

**5.**     **<u>This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case</u>**

Further, Wilkins' latest complaint also seemingly invites us to issue wide-ranging injunctions in these state cases.  To the extent that Wilkins' complaint invites this court to enjoin aspects of numerous state cases, and in effect calls upon us to dictate the result of these pending state cases, this *pro se* pleading runs afoul of a settled tenet of federal law, the <u>Younger</u> abstention doctrine.

The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  <u>See Younger v. Harris</u>, 401 U.S. 37, 41 (1971)."  <u>Kendall v. Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application.  As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding."  Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).  As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.  Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with state criminal cases.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for <u>Younger</u> abstention are present here with respect to those claims that seek to enjoin on-going state cases.  First, it is evident that there were state proceedings in this case.  Second, it is also apparent that those proceedings afforded a full and fair opportunity to litigate the issues raised in this lawsuit in this state case. <u>See</u> <u>Sullivan v. Linebaugh</u>, 362 F. App'x 248, 249-50 (3d Cir. 2010).  Finally, it is clear that the state proceedings implicate important state interests, since these matters involve state criminal law enforcement, an issue of paramount importance to the state. <u>See, e.g.</u>, <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for <u>Younger</u> abstention are fully met here, the decision to abstain rests in the sound discretion of this court.  <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002).

### 6. The Prosecutor Named in This Complaint Is Also Entitled to Immunity From Liability

Moreover, Wilkins' latest complaint fails with respect to the state prosecutor named in that complaint, the sole defendant in this lawsuit.  While the nature of his claims against the prosecutor is sometimes difficult to discern, it appears that the plaintiff is suing the prosecutor, in part,  for the very act of prosecuting him.  This he may not do.  It is well-settled that a criminal defendant may not sue prosecutors for their act of filing charges against him since such conduct is cloaked in immunity from civil liability.  The immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing criminal charges is broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role.  This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case."  Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors:  [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."

22

... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Here, we find that Wilkins' latest complaint largely seeks to hold a prosecutor personally liable for the act of prosecuting the plaintiff. Since this official is immune from personal, individual liability for the action of bringing this criminal case against an attempted murderer, Wilkins' claims against this defendant arising out of the decision to charge and convict him for engaging in murderous acts should also be dismissed.

### 7.     This Case is Time-Barred

Finally, in this case, it appears that Wilkins, once again, attempts to litigate matters relating to his 2003 criminal prosecution. To the extent that he invites us to reexamine this decade-old case, Wilkins' complaint runs afoul of the bar of the state of limitations. It is well-settled that federal civil rights claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric

Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations.  For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)).  See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of

isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. <u>See id.</u> at 755 n. 9 (citing <u>Berry v. Board of Supervisors of Louisiana State Univ.</u>, 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors. <u>See</u> <u>Berry</u>, 715 F.2d at 981.

<u>Cowell v. Palmer Township</u>. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, the events about which Wilkins complains all occurred more than ten years ago, and each of these alleged events was immediately invested with great significance by Wilkins, who has repeatedly filed claims relating to these alleged events over the past decade.  Therefore, straightforward application of the statute of limitations to this case compels the conclusion that any claims relating to Wilkins' 2003 conviction are now time-barred.

In short, while Glue has displayed extraordinary stick-to-it-tiveness in pursuing these decade-old claims, our review of his present pleading reveals that nothing that he has alleged sticks, and survives a motion to dismiss.  Therefore, it is recommended that this complaint be dismissed.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

motion to dismiss (Doc. 2.), be GRANTED and the plaintiff's complaint be

DISMISSED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen
> (14) days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all parties,
> written objections which shall specifically identify the portions of the
> proposed findings, recommendations or report to which objection is
> made and the basis for such objections.  The briefing requirements set
> forth in Local Rule 72.2 shall apply.  A judge shall make a de novo
> determination of those portions of the report or specified proposed
> findings or recommendations to which objection is made and may
> accept, reject, or modify, in whole or in part, the findings or
> recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis of
> that record.  The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

Submitted this 12th day of January 2016.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge